**UNITED STATES, Appellee,**

v.

**James CRUZ, Defendant, Appellant.**

**No. 97–2167.**

United States Court of Appeals,
First Circuit.

Heard June 3, 1998.

Decided Aug. 17, 1998.

Henry W. Griffin, by appointment of the Court, for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and George T. Dilworth, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and SCHWARZER,* Senior District Judge.

TORRUELLA, Chief Judge.

Appellant was charged, tried and convicted by a jury pursuant to allegations contained in a multiple count indictment in which the government claimed that he conspired to distribute a controlled substance in violation of 21 U.S.C. §§ 841 and 846, and engaged in violations of 18 U.S.C. §§ 922(g)(1), 922(g)(3), 924(c)(1), 924(e)(1), and 26 U.S.C. §§ 5841, 5861(d), and 5871, which all deal with the felonious possession of firearms in various circumstances. Thereafter, he was sentenced to imprisonment for 420 months to be followed by 8 years of supervised release.

Five issues are raised on appeal: (1) the legality of the search that led to the charges for which appellant was prosecuted and convicted; (2) the sufficiency of the evidence presented to establish proof beyond a reasonable doubt (and thus the validity of the district court's ruling denying appellant's motion for judgment of acquittal); (3) the district court's failure to declare a mistrial upon appellant's motion after alleged juror misconduct was called to the court's attention; (4) whether the district court's instructions to the jury regarding the government's allegedly improper statements in its closing argument were sufficient to avoid the need for a new trial; and (5) whether appellant was properly sentenced as an "armed career criminal." These issues will be discussed *seriatim.* In a separate brief, appellant challenges *pro se* the admission of certain evidence as well as certain remarks made by the government in its opening statement. We address these *pro se* arguments at the end of the opinion. Ultimately, we affirm the rulings of the district court.

## I.  *The Motion To Suppress*

### A.  *The facts*

At approximately 1:22 a.m. on August 23, 1996, appellant was detained by a state policeman for driving at 88 mph, which is in excess of the legal speed limit of 65 mph for the Maine Turnpike. As the officer approached appellant's vehicle, he observed a commotion among the occupants. There were three young males in the back seat, an adult female in front next to the driver, and an adult male driver. The officer asked the driver, who turned out to be appellant, to step outside the vehicle and to produce his driver's license, vehicle registration and insurance documentation. While this was taking place, the officer noticed that appellant's shirt was untucked, whereupon he asked appellant to lift his shirt so that his waistband was exposed. Nothing unusual was revealed.

The officer then conducted a patdown search of appellant, during the course of which he discovered a jackknife and a syringe and needle in his pants pockets. Appellant was placed under arrest for possession of illegal drug paraphernalia.[1]

After appellant was arrested, the officer proceeded to search the other occupants of the car. The sum of $5,000 cash was discovered in the purse of the female passenger, who was later identified as appellant's then-girlfriend Ericka Thibodeau, and a 9–mm pistol was recovered from her person.

---

\* Of the Northern District of California, sitting by designation.

1. Under Me.Rev.Stat. Ann. tit. 17–A, § 1111 (1964):

1. A person is guilty of illegal possession of hypodermic apparatuses if he intentionally or knowingly furnishes or possesses a hypodermic apparatus . . .

Thereafter, the officer found an ammunition magazine for the pistol on the floor of the car between the front and back seats. An additional magazine and three loose rounds were later found on the floor of the officer's car, directly behind where appellant had been placed after his arrest. Two rounds of 9–mm ammunition were also found tucked between the cushions of the seat that appellant had occupied.

### B. *Was the pat-down of appellant a permissible Terry stop and frisk?*

■ Appellant questions the validity of his frisk by the Maine officer as being beyond the scope permitted by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and seeks the suppression of all evidence discovered, claiming it is "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 485–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In this respect it is important to keep in mind that the district court's findings of fact are reviewable only for clear error, although its legal conclusions receive de novo treatment. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

Because appellant concedes that *Terry* permits the police to stop a person to investigate upon a reasonable suspicion that a crime has been committed, and because appellant does not contest the fact that he was violating the speed limit when he was stopped, our inquiry is narrow in scope. Was appellant's search after the legitimate stop reasonable under the circumstances?

We first look to whether the officer acted properly in ordering appellant to step outside his vehicle upon being stopped. The district court in effect concluded that the officer's suspicions were justifiably heightened, not only by the abrupt manner in which appellant's vehicle pulled over and came to a stop, but "by the exaggerated level of movement of the occupants of the car as it came to a stop, particularly those of the passenger in the right front seat." Given these findings, which are fully supported by the record, the officer's request that appellant step outside his automobile was justified. *See Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 885,

137 L.Ed.2d 41 (1997) (noting that, once vehicle lawfully stopped for traffic violation, constitutionally permissible for officer to order driver to get out of vehicle).

■ The next and final step of this inquiry is whether appellant's frisk, which provided the immediate cause for his arrest and which uncovered some of the incriminating evidence for which he was charged and convicted, was appropriate under *Terry.*

■ This step need not detain us long. Analyzing the propriety of a frisk involves a two-part inquiry, in which no single factor is controlling: "first . . . [one must determine] whether the officer's action was justified at its inception, and second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Walker,* 924 F.2d 1, 3 (1st Cir.1991) (quoting *United States v. Stanley,* 915 F.2d 54, 55 (1st Cir.1990)). The court must consider the circumstances as a whole, and must balance the nature of the intrusion with the governmental interests that are served. *United States v. Hensley,* 469 U.S. 221, 228, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

The circumstances of this stop are such that the officer would have been "foolhardy" not to have frisked appellant for weapons. *See Walker,* 924 F.2d at 4. In particular, the time of day and location of the incident, the excessive speed at which the vehicle was driven, the manner in which it came to a stop, and the unexplained commotion among its occupants who outnumbered the police officer five to one, was sufficient cause to conduct the initial limited patdown of appellant's front pants pockets, in which contraband was in fact discovered. What followed has been fully recounted and need not be repeated, but was certainly not "poisoned fruit."

"The Fourth Amendment by its terms prohibits 'unreasonable' searches and seizures." *New York v. Class,* 475 U.S. 106, 116, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). The stop and ensuing search were reasonable under the circumstances and thus the ruling of the district court denying suppression of the evidence is affirmed.

## II. *The Sufficiency of the Evidence*

■ In considering a motion for judgment of acquittal, both the trial and reviewing courts must evaluate the evidence and such reasonable inferences as arise therefrom in the light most favorable to the government. *United States v. Loder,* 23 F.3d 586, 589 (1st Cir.1994).

■ Appellant's arguments go principally to the credibility of various government witnesses, and are thus in large measure addressed to the wrong forum. *See United States v. Meader,* 118 F.3d 876, 881 (1st Cir.1997) (finding credibility assessments to be uniquely the domain of the jury).

### A. *18 U.S.C. § 924(c)(1)*

■ Count VII of the indictment charges appellant with using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1). Since this relates to the use or carrying of a firearm during and in relation to the drug crime alleged in Count I, we must look first to the government's proof in that respect.

In Count I of the indictment, appellant was charged with engaging in a conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. At least 8 witnesses testified that throughout the summer of 1996, they and others purchased crack cocaine from appellant. Each of these witnesses corroborated the other seven, and their testimony was also confirmed by the introduction of evidence seized from appellant's premises, which included cash, drugs, and drug paraphernalia. Viewing this evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the government, we find that there was enough evidence to allow a reasonable jury to convict on Count I.

■ Turning to the proof regarding Count VII, the evidence is equally overwhelming that appellant carried the 9–mm pistol that was introduced into evidence during the various phases of his drug deals, including during purchases, transportation, and, most bone-chillingly described by several witnesses, during drug-debt-collection episodes. Count VII was well proven.

### B. *18 U.S.C. §§ 922(g)(1) and 924(e)(1)*

The above evidence is also relevant to the Count VIII charge which alleges his condition as a felon in possession with respect to the 9-mm pistol. There is no question that appellant was a three-time felon, and that he was in possession of a firearm. Thus, Count VIII was established.

■ This evidence is equally applicable to Count IX, with the slight variation that appellant is charged there with knowing possession of the seven rounds of 9–mm ammunition discovered in various places where he had passed through during his travails. Appellant's disavowals as to this evidence were appropriately brought to the attention of the jurors, who were entitled to give his contention the weight that they considered it deserved. We see no reason to disturb their conclusion.

### C. *The sawed-off shotgun*

■ Count X is again a variation of the prior felon-in-possession theme, this one involving a sawed-off shotgun. Witnesses testified that the shotgun was purchased and paid for at appellant's behest, and that thereafter he took possession of this weapon. Appellant was a felon and he was in possession of a firearm—end of matter.

■ In Count XI, appellant was charged with possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5841, 5861, and 5871. A witness testified to helping appellant to saw the barrel off the shotgun referred to in Count X, which in fact he thereafter used to terrorize this same witness. This weapon was less than 26" overall, with a barrel shorter than 18", and was not registered in appellant's name in the National Firearms Registration and Transfer Record. Nothing further need be proven to establish the violations charged in Count XI of the indictment.

Lastly, Count XII which charges appellant, an illegal drug user, with possession of the shotgun in contravention to 18 U.S.C. §§ 922(g)(3) and 924(e)(1), was also clearly established beyond a reasonable doubt.

### III. *Alleged juror misconduct and denial of mistrial motion*

■ "When a non-frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial." *United States v. Barone*, 114 F.3d 1284, 1306 (1st Cir.1997) (quoting *United States v. Ortiz–Arrigoitia*, 996 F.2d 436, 442 (1st Cir.1993)). The trial judge is "vested with the discretion to fashion an appropriate and responsible procedure to determine whether misconduct actually occurred and whether it was prejudicial." *Ortiz–Arrigoitia*, 996 F.2d at 442. A district court has wide latitude in responding to such a claim, *Meader*, 118 F.3d at 880, and thus, the course of inquiry that is selected is reviewable only for patent abuse of discretion. *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990).

■ During a recess in the trial of this case, court personnel overheard three jurors discussing some of the evidence against appellant, conduct which was contrary to instructions previously given by the district judge to the jury. This information was made known to the trial judge, who promptly communicated the incident to trial counsel, requesting their views as to how to proceed. Appellant was of the view that only a mistrial was sufficient to correct the situation. The trial court opined that further inquiry was required before such a drastic measure would be taken, and decided instead to summarily excuse the three jurors involved, preventing any further contact between them and the other jurors, and investigate whether any of the remaining jurors had been contaminated.

In the presence of counsel, the trial judge separately examined two of the remaining jurors who were physically in the vicinity of the offending jurors and might have overheard their conversation. Upon being questioned, they denied any knowledge of the incident. Thereafter, the court summoned the remaining jurors as a group, admonished them to be candid, and explained to them what had happened regarding the excused jurors. He then asked the assembled jurors whether any of them had overheard the three jurors talking, whether they had heard any talk about the shotgun which was the subject of the transgressing jurors' conversation, and finally, whether any of them had made up their minds about the case. No juror responded in the affirmative to any of these questions. Thereafter, the court denied appellant's motion for mistrial and properly corrected any possible damage to the integrity of the trial.

Given the circumstances we have described, we are of the view that the trial judge acted well within his discretion in denying a mistrial.

### IV. *Alleged Prosecutorial Misconduct During Closing Argument*

■ Appellant did not give up his quest for a new trial. During the course of closing argument, counsel for appellant likened the government's witnesses to individuals who were trying to outrun the appellant while all were running from the federal government, which was portrayed as a voracious bear. In his rebuttal, government counsel responded to this allegory with his own version of what was going on, stating that "the man that [was] trying to outrun the bear is [appellant]" in contrast to other persons, which he named individually, who had "been caught by the bear and [had] accepted responsibility." The government went on to ask rhetorically, "Who is the man that is running?"

Shortly after these statements were made, the government ended its rebuttal and the trial judge called a recess prior to charging the jury. At that point, defense counsel challenged the propriety of these remarks as disparaging appellant's exercise of his constitutional right to a trial, and requested that a mistrial be declared. The district court denied appellant's petition, ruling that the objection was tardy in that it is "incumbent upon counsel when there is improper argument immediately to cut it off and to give the judge a chance to address it right there and that was not done...." In view of this ruling, appellant's counsel stated that, "[i]n the alternative [he] would ask for some sort of instruction ... that says, I think you may

have instructed this already, a person accused of a crime has a constitutional right to a trial." The trial judge responded that he would "give that instruction again as part of the proposed speaking draft of the instructions," to which defense counsel once more stated:

> COUNSEL: That would be what I would request simply to reiterate that a defendant has a constitutional right to a trial. Could there be something like no adverse inference can be drawn from the fact that a defendant exercised his constitutional right?
> THE COURT: Yes, I'll say something.
> COUNSEL: Do you want me to draft it or simply rely on the Court?
> THE COURT: I will draft it. Listen carefully. If you don't like it, you will have a chance to object.

The trial judge, at the appropriate time, proceeded to give the appropriate instructions, at which point he allowed all counsel the opportunity to object to the instructions given or to request further instructions. No such thing happened. *See United States v. Mendoza–Acevedo*, 950 F.2d 1, 4 (1st Cir. 1991) (noting that failure to renew objections after charge constitutes waiver of any claim of error).

■■■ There should be little doubt that appellant's claim of error is not well taken. To begin with, the trial judge was correct in ruling that a timely objection was not made. In this day and age we need not elaborate at length as to the consequences of such a failure. Suffice it to say that it constitutes a waiver of rights unless the error committed and not objected to is of such a magnitude as to have "so poisoned the well that the trial's outcome was likely affected." *United States v. Mejia–Lozano*, 829 F.2d 268, 274 (1st Cir. 1987). Of course, no such thing has taken place here. The weight and quantity of the evidence against appellant was nothing short of overwhelming, which places any hypothetical error committed in this respect in the "harmless" category. *United States v. Taylor*, 54 F.3d 967, 977 (1st Cir.1995).

To this we should add that the district court found, and the record supports, that the allegedly inappropriate comments by government counsel were not deliberate. We have uncovered nothing that would lead us to conclude that·this was anything but an isolated slip. *Id.* Lastly, the aforementioned exchange between appellant's counsel and the district judge leave us with the clear conviction that the proposed solution not only was accepted, but effectively protected appellant's rights. *Id.*

Any error that may have occurred was harmless beyond a reasonable doubt. *See United States v. Hasting*, 461 U.S. 499, 508, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) ("harmless error rule governs even constitutional violations under some circumstances").

## V. *Alleged Sentencing Errors*

Under Guideline section 4B1.4, "[t]he offense level for an armed career criminal is the greatest of" three options. The first is the offense level that results from ordinary Guidelines computations. The second option is "the offense level from § 4B1.1 [Career Offender], if applicable. . . ." *See* U.S.S.G. § 4(b)(2). The third alternative sets the offense level at 34 if the defendant used a firearm in the commission of a drug or violent crime, or possessed a sawed-off shotgun. *See* U.S.S.G. § 4B1.4(b)(3)(A).

■■■ Appellant claims that the trial court committed five errors in imposing the sentence from which he appeals. Four of these challenges are ultimately mooted by our affirmance of his Armed Career Criminal status. The four include attacks on the enhancements under U.S.S.G. §§ 2D1.1(b)(1), 2K2.1(b)(5), and 3A1.3 based on the quantity of the drugs. In addition, appellant challenges his Armed Career Criminal status on the ground that one of the predicate offenses was a conviction for an attempted criminal drug sale and, as an attempt, does not meet the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2. Application Note 1, however, specifically includes in "controlled substance offense" the offense of attempting to commit such offense.

Because appellant qualified as an Armed Career Criminal under § 4B1.1, his offense level was geared to the statutory maximum for the offense of the conviction. In the

present case, once appellant's enhancing information was filed as required by 21 U.S.C. § 851, the maximum sentence for his offense became life imprisonment, which has a minimum offense level of 37. The district court having correctly sentenced appellant based upon an adjusted total offense level of 37, we need not consider appellant's other challenges of his sentence.

## VI. *Appellant's Pro Se Arguments*

Appellant contends that the district court erred in allowing the testimony of Susan Cronin, whom the government failed to include on its initial witness list. Prior to trial, the court attributed the government's omission to "inadvertence," but agreed to allow Cronin to testify as long as none of the jurors knew or had heard of her. Appellant's counsel did not object to this approach either when it was proposed, or at the time the trial judge asked the jurors whether they knew Cronin. We note that "[e]ven when the government has produced a witness list ... in advance, when a witness ... not previously listed is offered, the decision to admit the testimony ... is within the discretion of the trial judge." *See United States v. Reis,* 788 F.2d 54, 58 (1st Cir.1986).

It was well within the district court judge's discretion to allow Cronin to testify. Nothing in the record suggests that appellant was prejudiced by the government's failure to include Cronin's name on the initial witness list. Since no member of the jury had heard of Cronin prior to trial, the integrity of the jury remained intact. Furthermore, appellant had sufficient time to prepare for Cronin's testimony because she did not testify immediately after being offered as a potential witness, but rather, later in the trial, as the government's ninth witness.

Appellant also objects to the substance of Cronin's testimony, which helped authenticate photographs of bruises inflicted on Ericka Thibodeau by appellant on September 4, 1996. Appellant avers that, under Fed.R.Evid. 403, the prejudicial impact of the photographs far outweighed their probative value. On appeal, we afford a district court's Rule 403 balancing substantial discretion. *See United States v. Lowe,* 145 F.3d 45, 51

(1st Cir.1998). The district court allowed the photographs into evidence as probative of Thibodeau's credibility. The trial judge, after due consideration of the photographs' potential prejudicial impact, determined that while the photographs were "unpleasant," they were not "gruesome." Accordingly, the trial judge concluded "[t]here is nothing prejudicial about the jury being able to see by way of corroboration of [Thibodeau's] testimony what it is that [appellant] did to her." Finding no abuse of discretion, we decline to disturb the district court's ruling on the admissibility of the photographic evidence.

Appellant contests the admission of Thibodeau's statements to Cronin as excited utterances under Fed.R.Evid. 803. Rule 803(2) allows the admission of hearsay, even though the declarant is available as a witness, if the statement is one "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The statements at issue were made on September 4th at approximately 8:00 a.m., shortly after Thibodeau arrived at the battered women's shelter where Cronin was employed. The evidence suggests that while the September 4th beating lasted until 4:00 a.m., Thibodeau was unable to escape the apartment where the assault occurred until some period after that time. It is likely that Thibodeau continued to suffer from the trauma of the beating when she fled to the women's shelter, and thus, the district court did not abuse its discretion in allowing her statements into evidence as excited utterances.

Finally, appellant challenges statements made by the government in its opening statement to the jury. Since appellant failed to object to any of these challenged statements on the record, we engage in plain error review. *See United States v. Sullivan,* 85 F.3d 743, 748 (1st Cir.1996). Under the plain error standard of review, "appellant bears the burden of persuasion to establish that there was an error, that the error was clear or obvious, and that the error affected substantial rights." *United States v. Shifman,* 124 F.3d 31, 38–39 (1st Cir.1997)

(internal quotations and citation omitted). In its opening statement, the government told the jury that a weapon was found in the police cruiser where appellant had been detained when, in fact, only ammunition had been discovered. The prosecution also stated that appellant admitted to owning the ammunition found in the cruiser to a police officer, but the evidence shows that appellant did not make such a statement to the officer. Lastly, the government stated that a shotgun and cocaine had been found in certain parts of an apartment although evidence failed to link the weapon and drugs to those exact locations.

Appellant does not make any particularized allegations of bad faith on the part of the government in making its opening statement. Moreover, the evidence presented at trial would have corrected any jury misperception arising from the government's opening statement. The arresting officer testified that he had discovered only ammunition, not a weapon, in his cruiser. In addition, the evidence showed that appellant told Thibodeau he had dropped his ammunition in the cruiser. Finally, the evidence connected appellant to the shotgun and drugs found in the apartment, rendering the exact location of the contraband irrelevant. It is important to note that, while a curative instruction was neither requested of nor issued by the district court, appellant's counsel, in his opening statement, which immediately followed the government's opening, stated, "I would like to make it clear these opening statements are not evidence." Under these circumstance, we find no plain error. *Cf. United States v. Ferrera*, 746 F.2d 908, 910–11 (1st Cir.1984) (no plain error where very little prejudice resulted from improper remark in government's opening statement).

The rulings of the district court are *affirmed* in all respects.