# United States Court of Appeals
## For the First Circuit

No. O5-1096

UNITED STATES OF AMERICA,

Appellant,

v.

OMAR SHARIF McKOY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Robert E. Richardson, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellant.
Judith H. Mizner for appellee.

November 1, 2005

**STAHL**, <u>**Senior Circuit Judge**</u>.  At Omar Sharif McKoy's trial for cocaine possession, the district court granted McKoy's motion to suppress evidence found on his person during a pat-frisk search conducted by the police after McKoy was stopped for a parking violation.  The government appeals the order granting the motion to suppress.  We affirm.

## I. Background

On a February afternoon in 2003, two plainclothes Boston police officers were patrolling Boston's Grove Hall neighborhood when they spotted a vehicle parked with its front end extending out into an intersection.  The vehicle was blocking an access ramp for the disabled and had a license place improperly displayed inside the windshield.  The officers testified that as they approached the vehicle, they made eye contact with the driver, McKoy, and then saw him twice lean and move his arm toward the center console area of the vehicle.  Suspecting McKoy might have been reaching for a weapon, one of the officers, Thomas Joyce, asked him to get out of the car and began to pat-frisk him.  The frisk revealed marijuana in McKoy's pocket, at which point Joyce arrested McKoy.  A further search of McKoy's person eventually recovered 5.63 grams of cocaine, and he was ultimately charged with cocaine possession.

At trial, McKoy moved to suppress the evidence found during the pat-frisk on the grounds that the frisk violated the Fourth Amendment to the United States Constitution.  The District

Court for the District of Massachusetts granted the motion, and the government now appeals.

## II. Discussion

An officer may conduct a brief investigatory stop when he or she has a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004). After a valid Terry stop, a pat-frisk for weapons is also permissible where "the officer is justified in believing that the person is armed and dangerous to the officer or others." Romain, 393 F.3d at 71 (quoting United States v. Schiavo, 29 F.3d 6,8 (1st Cir. 1994)); Terry, 392 U.S. at 24. It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met. To assess the legality of a protective frisk, a court looks at the totality of the circumstances to see whether the officer had a particularized, objective basis for his or her suspicion. United States v. Arvizu, 534 U.S. 266, 273 (2002).

We review a district court's findings of fact regarding a Terry stop and frisk for clear error and its legal conclusions de novo. United States v. Cruz, 156 F.3d 22, 26 (1st Cir. 1998). The district court found that the two officers were justified in initially stopping McKoy because they had probable cause to believe he had committed two traffic violations. This finding is clearly

-3-

correct. Thus, our inquiry centers on the validity of the frisk: that is, whether the totality of the circumstances provides a particularized objective basis for the officers' suspicion that McKoy was dangerous and posed a threat to their safety.

The government relies on two factors as rationales for the officers' concern for their safety: (1) the dangerousness of the neighborhood and (2) McKoy's nervous appearance and movements inside the car. Even taken together, these factors are insufficient to justify the frisk.

First, the district court found that the officers believed the neighborhood where McKoy was parked to be a high-crime area, given that there had been two recent incidents of people shooting at the windows of private security vehicles. While police are permitted to take the character of a neighborhood into account when assessing whether a stop is appropriate, see United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990), it is only one factor that must be looked at alongside all the other circumstances when assessing the reasonableness of the officers' fear for their safety. Moreover, "[t]his is not a case where the police had reason to suspect the presence of firearms based on the type of crime suspected." United States v. Lott, 870 F.2d 778, 785 (1st Cir. 1989). The only reason for the stop was a parking and license plate violation, from which no assumption about weapons may fairly be drawn. McKoy was the sole occupant of the vehicle and the

officers made their approach during daylight hours. The previous criminal incidents in the neighborhood thus lend only weak support to the officers' perception that McKoy was armed and dangerous.

Second, the government emphasizes that McKoy appeared nervous and avoided eye contact as the officers approached his car. McKoy also leaned and reached to his right, toward the center console of the vehicle. The government argues that McKoy's nervous demeanor and his movements in the car are the kind of alarming gestures that have been cited by courts as justifying a protective search after a Terry stop. See, e.g., United States v. Moorefield, 111 F.3d 10, 14 (3d Cir. 1997) (holding that police had reasonable suspicion to pat-frisk defendant during traffic stop where defendant failed to keep his hands in view after being instructed to do so). We disagree.

McKoy's claimed nervous manner is easily explained. Nervousness is a common and entirely natural reaction to police presence, and the district court found that McKoy knew he was dealing with police officers at least from the time the two officers approached his car.[1] Moreover, there was nothing sinister or menacing about McKoy's reaching movement toward the center console. Although it is possible that such a movement could be made to get a weapon, the movement is also consistent with reaching

---

[1] As the district court observed, if McKoy did not know the two men approaching his car were police, there was arguably even more reason to be nervous and avoid eye contact.

for a driver's license or registration, a perfectly lawful action that is to be expected when one is pulled over by the police. The government's proposed standard comes too close to allowing an automatic frisk of anyone who commits a traffic violation in a high-crime area. Although "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest," Terry, 392 U.S. at 24, a protective frisk for weapons requires a reasonable inference that the person being searched is armed and dangerous. Sibron v. New York, 392 U.S. 40, 64 (1968). It is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by police, even in a high-crime neighborhood.

## III. Conclusion

We fully recognize the risk of harm faced by police officers at any traffic stop. However, as the district court stated in its thoughtful opinion, "To admit the evidence would be a legal determination that if one commits a traffic violation in a high-crime neighborhood he will be subject to a frisk whenever he appears nervous and moves." Terry does not require that determination, and the Fourth Amendment prevents it.

**Affirmed**.