# United States Court of Appeals
## For the First Circuit

No. 06-2687

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT E. TAYLOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Stahl, Senior Circuit Judges.

William T. Murphy, by appointment of the Court, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Lee H. Vilker, Assistant United States Attorney, and Robert Clark Corrente, United States Attorney, were on brief for appellee.

December 21, 2007

**STAHL, Senior Circuit Judge**.  Robert E. Taylor appeals his conviction on one count of possession of a firearm by a convicted felon, arguing that the district court erred in denying his motion to suppress the firearm seized from him during a brief investigatory stop by members of the Providence, Rhode Island, police force.  We find no error in the district court's denial of the motion to suppress and therefore no grounds to vacate Taylor's conviction.

## I.  Background

In the afternoon of March 19, 2005, three Providence police officers were conducting a routine patrol in a high-crime area when they observed a group of people loitering in the rear corner of a parking lot.  The officers noticed that one of the men in the crowd was Miriour Perkins, a suspected drug dealer with a prior arrest record.  Concerned about possible drug-related activity, the officers pulled into the parking lot with the intention of dispersing the crowd.  They parked their unmarked car behind a black SUV stopped in front of a building along the right edge of the lot and exited their vehicle, passing the SUV as they proceeded towards the crowd at the back of the lot.

One of the officers, Thomas Zincone, recognized Taylor, whom he had encountered previously on five to seven occasions, sitting in the driver's seat of the black SUV.  According to the testimony of Officer Zincone, which the district court credited,

-2-

Taylor appeared far more nervous than he had been during their prior encounters and began to make quick movements with the right side of his body, as if attempting to hide something from Zincone's view. Zincone greeted Taylor and approached the driver's side window, at which point Taylor grabbed the steering wheel and leaned forward, moving so as to conceal his right side. Taylor responded nervously to Zincone's greeting and, "his hand . . . shaking, frantically pulled his ID from the window" and offered it to Zincone, unasked. Zincone then saw Taylor's right hand moving around on top of a beige towel, as though Taylor was endeavoring to conceal something beneath it. His suspicions aroused by Taylor's uncharacteristically nervous demeanor and furtive movements, Zincone asked Taylor to exit the vehicle. When Taylor stepped out of the vehicle, Zincone discerned the butt of a firearm protruding from underneath the beige towel. Zincone reached into the vehicle and pushed back the towel to confirm that there was in fact a firearm concealed beneath it. Just as Zincone leaned into the SUV, Taylor attempted to flee but was tackled by the officers. At that point, Taylor blurted out, "That ain't my gun!" and was then placed under arrest.

On February 1, 2006, a federal grand jury indicted Taylor on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Taylor moved to suppress all evidence seized and statements taken from him during the March 19th

-3-

encounter with the police, arguing that the investigatory stop was unconstitutional because the police officers "did not possess any articulable facts showing [he] was engaged in any criminal activity."  The district court denied Taylor's motion to suppress, considering the high-crime location, the officers' initial suspicions regarding the crowd amassed in the parking lot, the presence of known drug-dealer Miriour Perkins, Taylor's unusually nervous behavior, and Taylor's apparent attempts to conceal something from Officer Zincone's view, and concluding that "while none of the factors . . . alone [was] sufficient to have supported this stop and search, all of the factors considered together, when you look at the totality of the circumstances, [were] sufficient."

Following a jury trial,[1] Taylor was convicted on one count of possession of a firearm by a convicted felon and sentenced to fifty-seven months' incarceration.

## II.  Discussion

When reviewing a district court's determination whether to suppress evidence on Fourth Amendment grounds, we review the district court's fact-findings for clear error and its legal conclusions de novo.  United States v. Aitoro, 446 F.3d 246, 252 (1st Cir. 2006)(citing United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005)).  We are mindful that an appellate court must "exhibit

---

[1]There were in fact two jury trials; the first ended with a hung jury, the second with Taylor's conviction.

great respect for the presider's opportunity to hear the testimony, observe the witnesses' demeanor, and evaluate the facts at first hand." United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994).

"An officer may conduct a brief investigatory stop when he or she has a reasonable, articulable suspicion that criminal activity is afoot." McKoy, 428 F.3d at 39 (citing Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004)). "The officer's initial actions must be justified at their inception and his subsequent actions must be 'responsive to the emerging tableau—the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.'" United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006), cert. denied, 127 S. Ct. 1320 (2007)(quoting United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001)). This court evaluates each case based on the "totality of the circumstances . . . to ascertain whether the officer had a particularized, objectively reasonable basis for suspecting wrongdoing (and, thus, for making the initial stop)." Id.

On appeal, Taylor first argues that the stop began when the officers pulled into the parking lot and parked behind his SUV, maintaining that the stop was therefore unjustified at its inception because the police had no reasonable grounds to suspect Taylor of criminal activity at that time. This argument is without merit. As a preliminary matter, Taylor did not raise this argument

before the district court; in fact, it seems clear from the record below that Taylor's theory at the suppression hearing was quite to the contrary.[2]  Absent extraordinary circumstances, "[i]t is a bedrock rule that when a party has not presented an argument to the district court, [he] may not unveil it in the court of appeals." United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992).

Even assuming *arguendo* that this issue is properly before us, we find Taylor's position unconvincing.  The district court held that "there was no Terry stop or anything resembling a Terry stop until the officers told Mr. Taylor to exit the vehicle."  This holding presents a mixed question of law and fact; accordingly, we review the legal conclusion de novo and the underlying factual findings, and any inferences drawn from those findings, for clear error.  See United States v. Espinoza, 490 F.3d 41, 48 (1st. Cir. 2007)("[O]ur function is not to decide whether we, if sitting as arbiters of the facts, would have drawn the same inferences but, rather, to determine whether the district court's chosen inferences are plausible (and, thus, permissible) based on the raw facts as supportably found.").

---

[2]At the suppression hearing, Taylor offered two theories regarding the commencement of the investigatory stop, neither of which comports with his theory on appeal.  Counsel for Taylor at that hearing stated, "I think the first point that the Court could make that determination is when the police are parked behind the SUV and Officer Zincone and Officer O'Brien are outside . . . hanging in the doorway of the SUV," but then conceded, "I think that the stronger argument for when Terry's invoked is when the police open up the [SUV] door."

The district court credited Officer Zincone's testimony that the police pulled into the parking lot not because of Taylor, but because of the crowd gathering in the far corner, and indeed were unaware of Taylor's presence until Zincone exited the police cruiser and began to walk past the black SUV towards the crowd.[3] This testimony was supported by that of the other officers on patrol with Zincone, and Taylor offered no plausible evidence to the contrary. Accordingly, we find no clear error in the district court's factual findings.

As a matter of law, approaching a parked car and questioning the occupant does not necessarily rise to the level of a Terry stop, "unless it was objectively reasonable for that person to believe that he was compelled to stay and answer the question." United States v. Smith, 423 F.3d 25, 30 (1st Cir. 2005); see also United States v. Drayton, 536 U.S. 194, 200 (2002) (holding that "[l]aw enforcement officers do not violate the Fourth Amendment . . . by approaching individuals on the street or in other public

---

[3]There is some question as to whether there was truly a crowd of people gathered in the parking lot or whether Miriour Perkins was alone. At the suppression hearing, Perkins admitted that he was standing in the parking lot that day but maintained that he was standing alone. We agree with the district court that it is a question of little import; whether the officers' initial target was Perkins alone or Perkins amidst a crowd of people, Perkins's testimony casts no aspersions on the officers' version of events once their attention turned to Taylor. The district court ultimately accepted the officers' testimony that there was a crowd gathered in the lot and we see no clear error in that determination that would compel us to find otherwise.

places and putting questions to them if they are willing to listen"); Espinoza, 490 F.3d at 48 (finding that "even without reasonable suspicion, [a police officer] had a right to approach the parked vehicle and talk to its occupants if that interview was purely consensual"); United States v. Douglas, 467 F.3d 621, 623-34 (7th Cir. 2006) (concluding that no seizure occurred when police officers parked in front of defendant's car, approached the car from two sides, and shined their flashlights into the car).

Here, the record refutes Taylor's claim that "no one in [his] position could have reasonably believed he was free to leave" from the moment the police car parked behind him. As an initial matter, the officers were driving an unmarked Crown Victoria; there is no evidence that Taylor knew that the car that had parked behind him was a police car until the officers approached the SUV in which he was sitting and Taylor and Zincone recognized each other. Additionally, while Taylor maintains that, on the afternoon in question, the parking lot was "flooded with cars" and the police therefore blocked his only egress by pulling in behind the black SUV, other evidence indicates that Taylor was not in fact hemmed in from all sides and could have driven forward and turned left to exit the parking lot. See Smith, 423 F.3d at 30 (holding "mere physical limitations on an individual's movement, not created by police, are insufficient to turn an encounter with police into a restraint of liberty").

In the alternative, Taylor contends that, even if the investigative stop did not begin until Zincone ordered Taylor to exit the SUV, the stop and subsequent search of the vehicle that uncovered the firearm were impermissible. Taylor argues that the district court erred by premising a finding of reasonable suspicion largely upon his nervous demeanor. Taylor characterizes his increased nervousness as a response to police "harassment" and contends that the police officers could not properly use such nervousness as a basis for inferring that he was involved in criminal activity. See McKoy, 428 F.3d at 40-41 (1st Cir. 2005) (holding that a person's mere nervousness, after being pulled over for committing a traffic violation in a high-crime area, does not establish reasonable suspicion for a pat-and-frisk search).

Assessments of reasonable suspicion are highly fact-specific and must be performed on a case-by-case basis. See Espinoza, 490 F.3d at 46. After a careful review of the record, we find this case sufficiently distinguishable from McKoy to support a finding of reasonable suspicion. Several factors differentiate this case: 1) the officers, having pulled into the parking lot to investigate suspected drug activity, were already alert to the possibility of criminal activity in the lot; 2) Zincone had interacted with Taylor on prior occasions and testified that Taylor had not exhibited comparable nervousness on those occasions; and 3) unlike the driver in McKoy, Taylor did more than merely reach

towards the center console but rather appeared to be actively attempting to conceal something from the officers' view. <u>See McKoy</u>, 428 F.3d at 40-41. The above factors combined provide sufficient reasonable suspicion to justify Zincone's decision to order Taylor to step out of the car. Once Taylor exited the car, the butt of the firearm was in plain view; thus it is fruitless to argue (and, indeed, on appeal Taylor does not appear to be attempting to argue) that Zincone's subsequent retrieval of the firearm implicates any additional Fourth Amendment concerns.

## III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Taylor's motion to suppress.

<u>Affirmed.</u>