# United States Court of Appeals
## For the First Circuit

No. 07-1479

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL SOARES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Albert F. Cullen, Jr. and Law Office of Albert F. Cullen, Jr.,
on brief for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief for appellee.

March 28, 2008

**TORRUELLA, Circuit Judge.** Michael Soares was the passenger in a car that the police stopped in a heavy crime area, late at night, for driving without headlights. During the course of the stop, Soares was removed from the car by the police and pat-frisked. A loaded hand-gun was found on his person. Soares argues that the police pat-frisked him in violation of the Fourth Amendment. Soares's motion to suppress the hand-gun was denied by the district court, and he entered a conditional plea of guilty to being a felon in possession of a hand-gun under 18 U.S.C. § 922 (g)(1). He now appeals the district court's denial of his motion to suppress. After careful consideration, we affirm.

## I. Background

"We view the facts in the light most favorable to the district court's ruling with respect to [the defendant's] motion to suppress." United States v. Kimball, 25 F.3d 1, 3 (1st Cir. 1994). We recite the facts as found by the district court, consistent with record support. See United States v. Brown, 510 F.3d 57, 61 n.1 (1st Cir. 2007); see also United States v. Soares, 451 F. Supp. 2d 282, 284-286 (D. Mass. 2006) (district court's factual findings).

On December 6, 2005, at approximately 1:15 a.m., Boston police officers Linwood Jenkins and Jason Reid, dressed in plain clothes and in an unmarked car, observed a green Lexus take off from a curb without headlights and with malfunctioning breaklights. The Lexus was in a high-crime area. The officers decided to stop

the car based on the driver's failure to illuminate his headlights, which the police deduced from the lack of taillights. Before the Lexus stopped, the police noticed the passengers in the car make movements down and to their left. The driver motioned towards his door, and the front-seat passenger motioned towards the console. No movement was observed in the back seat.

Reid testified that the movement in the car concerned him, and he wanted "to keep a good eye on everyone's movement from that point on." The officers called dispatch before approaching the car. Reid called out "furtive movements" when he observed the passengers moving around in the car. He approached the car on the passenger's side with his gun unholstered in a "low ready" position, making his weapon clearly visible to Soares who was sitting in the front seat. Jenkins approached the car on the driver's side with his hand on his gun in an unsnapped holster. Reid repeatedly ordered the passengers in the car to keep their hands where he could see them and remain still. Soares, Allen Lee, the driver, and Rasheed Marsman, the backseat passenger, complied with the orders at first. Almost immediately, Soares became agitated, began to rock back and forth, was verbally abusive, and kept moving his hands around. He accused the officers of stopping them for "driving while Black."

Meanwhile, Lee gave his license and registration to Jenkins, and Jenkins returned to his car to check them. Reid

-3-

remained at the Lexus with his flashlight. Jenkins then returned from the police car to read Lee a citation for the malfunctioning lights. After Lee complained that there was no justification for the stop, Jenkins offered to show Lee the malfunctioning light. Lee stepped out of the car to view the malfunctioning light and consented to a pat-frisk. At about this time, two other policemen, Jeff Lapolis and Paul Brooks arrived at the scene in separate cars; these officers happened to be in the area. One officer parked in front of the Lexus; the second officer parked behind Reid and Jenkins, who were directly behind the Lexus.

As this was going on, Reid went to the driver's side of the car. Soares became verbally abusive to Reid, and he continued moving his hands despite Reid's orders to keep still. Although Reid repeatedly asked Soares to stay still, Soares persisted in his agitation. Reid testified that Soares was "rocking back and forth" and "flailing" and "flipping" his hands around -- all the while using profane language directed at the officers.

Reid testified that at that point he "got a little uneasy." In response to Soares's erratic behavior, Reid asked the back-up officers to remove Soares from the car because he "felt really uneasy about . . . the way [Soares] was behaving." Lapolis and Brooks were standing at the passenger side of the car. After Lapolis removed Soares from the car, he attempted to pat-frisk Soares, but Soares swatted Lapolis's hand away from his waist.

-4-

Lapolis and Brooks then moved Soares to a nearby wall where Lapolis frisked him after a scuffle. Lapolis felt a hard object through Soares's clothes and yelled "gun." Lapolis and Brooks subdued Soares and removed a loaded .9mm gun from Soares's pants. Soares was arrested, along with Marsman and Lee. A federal grand jury returned a one-count indictment charging Soares with being a felon in possession of a firearm and ammunition under 18 U.S.C. § 922 (g)(1).

On June 19, 2006, prior to trial, Soares filed a motion to suppress all evidence on the ground that there was no reasonable justification for stopping the vehicle and the police officers lacked probable cause and justification for a pat-frisk. On September 12, 2006, after an evidentiary hearing, the district court denied Soares's motion to suppress. The district court found that the stop was valid, that Soares's Fourth Amendment rights were not violated, and that the officers' actions were objectively reasonable. On November 27, 2006, Soares entered a conditional guilty plea to the indictment, which the district court accepted on November 27, 2006. On March 1, 2007, Soares was sentenced to thirty months' imprisonment, followed by twenty-four months of supervised release. Soares appeals the motion to suppress pursuant to the conditional plea, but on appeal only challenges the pat-frisk.

## II. **Discussion**

### A. **Standard of review**

This court reviews a district court's determination of reasonable suspicion and probable cause on a motion to suppress de novo. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Capelton, 350 F.3d 231, 240 (1st Cir. 2003). The district court's findings of fact are reviewed for clear error. Capelton, 350 F.3d at 240. We give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas, 527 U.S. at 699. We will uphold a denial of a motion to suppress "if any reasonable view of the evidence supports it." Brown, 510 F.3d at 64 (internal quotation marks and citations omitted); see also United States v. Kornegay, 410 F.3d 89, 93 (1st Cir. 2005).

### B. **Analysis**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "[I]ts protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). Yet "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." Terry, 329 U.S. at 24. A pat-frisk of a passenger in a

car that is stopped for a traffic violation is one of those situations.

On appeal, Soares acknowledges that the police had probable cause to stop Lee's car. See Whren v. United States, 517 U.S. 806, 810 (1996). The stop is not at issue here. What is at issue is whether after the police officers made their stop, they had justification to pat-frisk Soares. A fair reading of the facts demonstrates that the officers acted lawfully out of concern for their safety.

In examining the pat-frisk of Soares, we are guided by United States v. Romain, 393 F.3d 63 (1st Cir. 2004). In Romain, we said that, "in determining whether a pat-down search is an appropriate step following a valid Terry stop, the key is whether, under the circumstances, 'the officer is justified in believing that the person is armed and dangerous to the officer or others.'" Id. at 71 (quoting United States v. Schiavo, 39 F.3d 6, 8 (1st Cir. 1994)). The facts demonstrate that the officers believed that their safety was at risk. Several additional facts became known as the stop progressed, which, taken together, created reasonable suspicion that Soares might be armed and dangerous. United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998) ("Based on unfolding events, the trooper's attention (and, thus, his reasonable suspicions) shifted away from the equipment violations that prompted the initial stop toward a belief that the detainees were

engaged in more serious skulduggery. Such a shift in focus is neither unusual nor impermissible."). The occupants' movements caused Jenkins to approach the car with his hand on his gun while Reid had his in a "low ready position." See United States v. Trullo, 809 F.2d 108, 113 (1st Cir. 1987) ("draw[ing] a gun while approaching a suspect in this context is an act of caution") (internal quotation marks omitted). The record reflects that Reid and Jenkins made several other observations that alerted them to the potential for danger: the traffic stop occurred in the middle of the night; it occurred in an area "plagued with numerous drug arrests, assaults by handgun, assaults by stabbing, robbery, fighting . . . illicit narcotics . . . barroom fights and nuisances like that"; the officers saw Lee and Soares bend over toward their left, as if putting something on the floor, which the officers testified were "furtive movements" and were "not ordinary." See United States v. Ivery, 427 F.3d 69, 73-74 (1st Cir. 2005) ("Though . . . any one of these features, standing alone, may be insufficient to support reasonable suspicion, we have repeatedly held that when evaluating the validity of a Terry stop, we must consider all of the relevant circumstances . . . which are not to be dissected and viewed singly; rather they must be considered as a whole.") (internal citation and quotation marks omitted).

These facts taken together created reasonable suspicion on the part of the officers. Reasonable suspicion is evaluated

based on "the totality of the circumstances and it demands a 'practical, commonsense approach.'" United States v. Jones, 432 F.3d 34, 40 (1st Cir. 2005) (quoting Sowers, 136 F.3d at 28); United States v. Taylor, 162 F.3d 12, 19 (1st Cir. 1998) (citation omitted). We have found that officers faced with similar circumstances were justified in conducting warrantless pat-frisk searches for weapons. See United States v. Cruz, 156 F.3d 22, 26 (1st Cir. 1998) ("The circumstances of this stop are such that the officer would have been 'foolhardy' not to have frisked appellant for weapons.").

After Reid approached Soares, Soares gave Reid even more reason to fear for his safety. See United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997) ("The information developed in connection with [a] temporary investigative stop may in turn provide grounds for a full custody arrest."). Once the car was stopped Soares refused repeated orders to remain still and keep his hands in Reid's view. Soares continually used abusive and profane language, and he became increasingly agitated as the stop progressed. Reid testified that Soares's erratic and uncooperative behavior made him "extremely nervous." Reid observed him move his hands out of the officers' sight towards the area that he first saw him motion towards at the start of the stop. Reid could reasonably have thought that Soares was reaching for a weapon. Reid only asked Lapolis to remove and frisk Soares after his continued

erratic movements and disconcerting behavior. See Maryland v. Wilson, 519 U.S. 408, 414 (1997) ("[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car" and "therefore . . . an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). Reid testified that he asked Lapolis to pat-frisk Soares only because he "felt really uneasy about . . . the way [Soares] was behaving." Under the circumstances, Reid's judgment that Soares posed a threat was an objectively reasonable and a justified reaction to the situation.

Soares also argues that the facts here are substantially the same as those in McKoy, in which we held that the police lacked reasonable suspicion for a pat-frisk. See United States v. McKoy, 428 F.3d 38, 41 (1st Cir. 2005). In that case, the officers based their suspicion on the dangerousness of the neighborhood and McKoy's nervousness. Id. ("It is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by police, even in a high-crime neighborhood."). Soares's heavy reliance on the outcome in McKoy fails to account for the differences between McKoy and this case. The officers clearly had reason to believe that Soares was dangerous and a threat to their safety.

-10-

We have reminded the police that "the character of the neighborhood does not provide automatic permission" for them to stop and search any and everybody in a high-crime neighborhood. United States v. Villanueva, 15 F.3d 197, 199 (1st Cir. 1994) (citing Brown v. Texas, 443 U.S. 47, 52 (1979)).  But "every case must be considered on its own reasons for suspicion of danger." Id. (citation omitted).  Our reminder was not meant to prevent the police from performing lawful stops of cars and pat-frisks of its passengers just because they happen to be in high-crime neighborhoods.  There is nothing inconsistent with Villanueva and the actions of the police on the night in question.  Unlike in McKoy, the police here relied on more than just nervousness and the fact that they stopped the car in a high-crime neighborhood.  See McKoy, 428 F.3d at 40.  The police testified that movement in the car as Lee stopped the vehicle, the verbal abuse, and Soares's constant arm-flailing and rocking back and forth all contributed to the officers' suspicions and fears.  In McKoy, we said that "[a]fter a valid Terry stop, a pat frisk for weapons is . . . permissible where 'the officer is justified in believing that the person is armed and dangerous to the officers or others.'" Id. at 39 (quoting Romain, 393 F.3d at 71).

The officers demonstrated that they feared for their safety.  They approached the car with their sidearms, ready to use them if the situation required it.  Soares was not only verbally

-11-

abusive, but he repeatedly ignored the officers' orders to remain still; he continuously waved his arms around erratically. His movements could easily be seen as an attempt to create a diversion and confusion amongst the officers while he and the other passengers created an environment that was unsafe for the officers. Nothing in Soares's version of events conflicts with what the officers offered to demonstrate the threat that he posed. See Cruz, 156 F.3d at 26; United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990) ("Officer['s] suspicion was reasonable, based on the location and the defendant's conduct both before and after the officers approached [defendant's] car."); Romain, 393 F.3d at 72 ("frenetic behavior [was] a plausible basis for suspecting that the appellant was armed and dangerous").

## III.  Conclusion

As the facts demonstrate, a "reasonable view of the evidence supports" the denial of the motion to suppress. Kornegay, 410 F.3d at 93 (citation omitted). We affirm the denial of the motion to suppress.

**Affirmed**.