NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-1853

UNITED STATES OF AMERICA

v.

RONALD COLEN,
                              Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. 2-10-cr-00474-001)
District Judge: Honorable John P. Fullam

Submitted under Third Circuit LAR 34.1(a)
April 19, 2012

Before: McKEE, *Chief Judge*, SLOVITER, *Circuit Judge*,
and O'CONNOR, *Associate Justice* (Ret.)[*]

(Opinion filed: May 18, 2012)

OPINION

McKEE, *Chief Judge*.

    Ronald Colen was indicted by a grand jury on July 27, 2010, and charged with one

count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

922(g)(1).  Prior to trial, Colen filed a motion to suppress  physical evidence and an

inculpatory statement that police obtained after he was searched during the course of a

traffic stop.   The district court denied the motion and Colen thereafter entered a

_____

[*]Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the
United States, sitting by designation.

1

conditional guilty plea to possession of a firearm by a convicted felon, thereby reserving the right to appeal the suppression ruling. For the reasons that follow, we will affirm the district court.[1]

## I.

Since we write primarily for the parties who are familiar with this case, we need not set forth the underlying facts or procedural history except to the extent that they assist our brief discussion.

The Fourth Amendment prohibits "unreasonable searches and seizures," and searches without a warrant are presumptively unreasonable. U.S. Const. amend. IV; *Horton v. California*, 496 U.S. 128, 133 (1990). However, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). Thus, where – as here – police conduct a valid traffic stop they may conduct a limited search for weapons by patting-down the driver and/or occupants of the stopped vehicle for their own protection. If the police have reasonable suspicion to believe that the person stopped may be armed and dangerous, such a suspicion is supported by articulable facts. *Terry*, 392 U.S. at 21; *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

---

[1] We review the district court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the district court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

However, because of the danger police face when they engage in traffic stops, the Supreme Court has held that the Fourth Amendment allows them to extend the scope of the *Terry* search to  areas of the stopped vehicle where a weapon may be hidden. *Michigan v. Long*, 463 U.S. 1032, 1050 (1983).

In *Maryland v. Buie*, 494 U.S. 325, 332 (1990), the Supreme Court explained:

> In *Michigan v. Long*, 463 U.S. 1032  (1983), the principles of *Terry* were applied in the context of a roadside encounter: "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect in dangerous and the suspect may gain immediate control of weapons." *Id*. at 1049-1050 (quoting *Terry*, *supra*, 392 U.S., at 21).  The *Long* Court expressly rejected the contention that *Terry* restricted preventative searches to the person of the detained suspect.  463 U.S. at 1047.  In a sense, *Long* authorized a "frisk" of an automobile for weapons.

Reasonable suspicion is a less demanding standard than probable cause  and requires a showing considerably less than preponderance of the evidence.  *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (quoting *Sokolow*, 490 U.S. at 7).  Although reasonable suspicion requires more than an "unparticularized suspicion or 'hunch,'" the police officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in his belief that his safety or that of others was in danger."  *Terry*, 392 U.S. at 27.  "To determine whether reasonable suspicion exists, we must consider the " 'totality of the circumstances – the whole picture.'"  *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)

3

(quoting *Sokolow*, 490 U.S. at 8). This includes the officer's "knowledge, experience, and common sense judgment about human behavior." *Robertson*, 305 F.3d at 167. "This . . . allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (citation and internal quotation marks omitted).

## II.

Colen argues that the circumstances here did not support a reasonable suspicion that he was armed and dangerous. He submits that after being stopped for a traffic violation, he remained calm and cooperated with the police. Colen relies on *United States v. McKoy*, 428 F.3d 38 (1st Cir. 2005), in arguing that reaching for a center console during a traffic stop in a high crime neighborhood does not warrant this kind of search and that a contrary ruling would diminish the privacy rights of all who reside in such neighborhoods as they would be subject to a search whenever they gesture toward their consoles or glove compartments during a traffic stop.

In *McKoy*, the court granted a suppression motion and explained that: "[i]t is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by police, even in a high-crime area." *Id*. at 41. The court noted that reaching toward the center console "is also consistent with reaching for a driver's license or registration, a perfectly lawful action that is to be expected when one is pulled over by the police. The

4

government's proposed standard comes too close to allowing an automatic frisk of anyone who commits a traffic violation in a high-crime area." *Id*. at 40.

*McKoy* doesn't help Colen because the police had already seen him retrieve his license and registration from his pocket. They therefore knew he was not reaching for either of those items when they saw him gesture toward the center console. They therefore had reason to both suspect his intentions and reason to be concerned for their own safety.

The police officers had a valid basis to stop Colen for investigation of a motor vehicle code violation because he was driving an automobile with excessively tinted windows. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). In the course of such a stop, police may exercise reasonable control over the car and its passengers. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004). The Supreme Court has explained that this goes as far as allowing police to order the occupants out of a car and searching them even in the absence of particularized suspicion. *Mimms*, 434 U.S. at 110-11. Here, once police made the valid traffic stop of the car Colen was driving, they quite properly asked him for his license and registration. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

Here, the police acted reasonably. Their suspicion was aroused when they saw Colen quickly shut the center console as they first approached the car. They did not conduct a search at that point although they clearly could have under *Mimms*. Thereafter, Colen removed his license and registration from his rear pants pocket, thus negating a possible explanation for his gestures toward the center console. When the officers

returned to their car, they both saw Colen again reaching for the center console. Only then did the officers remove him from the car, frisk him, and search the portion of the interior of the car that would have been within his immediate control when they allowed him to get back in. It was during that protective search that Officer Mason found the loaded handgun.

When deciding to conduct the kind of limited search that occurred here, "'an officer need not be absolutely certain that the individual is armed' so long as the officer's concern was objectively reasonable." *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000) (quoting *Moorefield*, 111 F.3d at 13-14). The officers' decision to check the center console for weapons was completely justified by the circumstances here.

## III.

For all of the above reasons, we will affirm the district court.