# United States Court of Appeals
## For the First Circuit

No. 19-1421

CARIBBEAN MANAGEMENT GROUP, INC.,

Plaintiff, Appellee,

v.

ERIKON LLC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Iván Aponte-González, Héctor J. Quiñones Inserni, and García,
Aponte & Quiñones, LLC on brief for appellant.
Eugene F. Hestres and Bird Bird & Hestres, P.S.C. on brief
for appellee.

July 17, 2020

**SELYA**, **Circuit Judge**.  A money judgment (even a money judgment for several million dollars) may not be worth the paper on which it is written if the judgment creditor does not undertake timely enforcement action.  This case, in which the judgment creditor slept upon its rights until the prescribed period for execution of judgments had elapsed, illustrates the point.  Given the judgment creditor's failure to act in a timeous manner, we affirm the district court's denials of both its motion for leave to execute on the judgment and its motion for reconsideration.

## I.

### Background

We briefly rehearse the relevant facts and travel of the case.  In 2006, Erikon LLC (Erikon) sold its interest in a development project in Aguadilla, Puerto Rico, to Caribbean Management Group, Inc. (CMG).  As part of the consideration for the purchase, CMG executed a promissory note payable to Erikon for $7,500,000.  David Wishinsky Kerr (Wishinsky) personally guaranteed CMG's indebtedness.

A dispute soon arose over CMG's obligations under the note, and CMG and Erikon sued each other in the United States District Court for the District of Puerto Rico.  After the cases were consolidated, the parties reached a settlement and requested that the district court enter a consent judgment in Erikon's favor against CMG and Wishinsky, jointly and severally, for $7,500,000

(plus $50,000 in attorneys' fees).  The court entered the stipulated judgment on March 25, 2008.[1]

Erikon immediately encountered strong headwinds in collecting on the judgment.  By September of 2008, CMG and Wishinsky had paid only $250,000 toward satisfaction of the judgment.  At Erikon's request, the district court issued a writ of attachment on two parcels of land owned by CMG and/or Wishinsky, together with an order authorizing the public sale of those parcels.  The record contains no indication that the judicially authorized sale ever took place.

Endeavoring to explore other avenues for collecting on the judgment, Erikon repeatedly sought to take Wishinsky's deposition.  Erikon's efforts stalled, but in February of 2009, CMG, Wishinsky, and Erikon reached an agreement regarding payment of the balance owed on the judgment.  CMG and Wishinsky committed to making monthly payments and, as long as they complied, Erikon agreed not to execute on the judgment.  Pursuant to this arrangement, CMG and Wishinsky paid Erikon an additional $2,900,000 over the next twenty-two months.

---

[1] As entered, the judgment also ran in favor of Koeniger Development, Inc. (Koeniger), a corporate entity affiliated with Erikon.  Koeniger's efforts to enforce the judgment seem to have ended around 2014, and it did not join the execution-related motions filed by Erikon that underlie this appeal. Consequently, we make no further mention of Koeniger.

CMG and Wishinsky stopped making payments in January of 2011. Even so, Erikon made no meaningful effort to collect the balance of the judgment for approximately two years. We fast-forward to early 2013, at which time Wishinsky's attorney, who also represented Caribbean Seaside Heights Properties, Inc. (Seaside), an entity affiliated with the Aguadilla development project, approached Erikon. They discussed both the outstanding balance owed on the judgment and a separate claim that Seaside was bent on bringing against Erikon for expenses incurred in the course of the Aguadilla project. These discussions went nowhere, and Seaside sued Erikon in May of 2013. During the pendency of the Seaside litigation, further attempts to reach a global settlement came to naught.

Harking back to the original case, Erikon moved in April of 2014 for the appointment of a special master to conduct the public sale of the attached parcels of real estate. The following February, the district court denied the motion without prejudice. The court determined that Erikon's effort to execute on the judgment was untimely under Rule 51.1 of the Puerto Rico Rules of Civil Procedure (P.R.R. 51.1) because more than five years had passed since the judgment became final. The court invited Erikon, if it so desired, to move for leave to execute on the judgment out of time.

Erikon did not take up the court's invitation then and there. Instead, Erikon turned its attention to defending the Seaside litigation. In July of 2016, the court presiding over the Seaside litigation entered summary judgment in Erikon's favor. Seaside appealed and, during the pendency of the appeal, Seaside and Erikon engaged in three court-ordered settlement conferences. Although they were not parties to the Seaside litigation, CMG and Wishinsky participated in some of these negotiations in an attempt to reach a global settlement. When the settlement talks failed, we affirmed the summary judgment. See Caribbean Seaside Heights Props., Inc. v. Erikon LLC, 867 F.3d 42, 45 (1st Cir. 2017).

In July of 2017, Erikon at long last moved for leave to execute on the judgment and renewed its request for appointment of a special master. The district court denied the motion, reasoning that Erikon had waited to file its motion until more than six years after CMG and Wishinsky's final payment in January of 2011 and that Erikon had failed to justify the delay of more than two years since the denial of its first request to appoint a special master. Erikon moved for reconsideration of this order under Federal Rule of Civil Procedure 59(e). While Erikon calls this filing a "Motion to Set Aside Order Pursuant to FRCP 59(e)," the filing was technically a motion to alter or amend the judgment, see Fed. R. Civ. P. 59(e), and we refer to it as a motion for reconsideration. The nomenclature has no bearing on the outcome of this appeal.

- 5 -

The court summarily denied the motion for reconsideration. This timely appeal followed.[2]

## II.

### Analysis

Our discussion proceeds in three parts. We begin by ironing out two wrinkles that relate to our appellate jurisdiction and the scope of our review. With the surface smoothed, we turn sequentially to the district court's denial of Erikon's motion for leave to execute on the judgment and its denial of Erikon's motion for reconsideration.

### A.

### Appellate Jurisdiction

We start with two questions that relate to our appellate jurisdiction. The first concerns the contours of our jurisdiction under 28 U.S.C. § 1291 — a statutory provision that allows circuit courts to review "appeals from all final decisions of the district courts." The parties — who agree on little else — both tell us that the district court's order denying Erikon's motion for leave to execute on the judgment was a final order and, thus, fit for review. Despite this assurance, though, we have some independent

---

[2] Wishinsky did not respond in the district court to Erikon's motion to appoint a special master, its motion for leave to execute on the judgment, or its motion for reconsideration. Nor has he appeared in this court despite being designated as an appellee. Any reference to the parties to this appeal is therefore limited to Erikon and CMG.

- 6 -

responsibility to examine potential jurisdictional infirmities before proceeding to the merits. See Me. Med. Ctr. v. Burwell, 841 F.3d 10, 15 (1st Cir. 2016).

A district court order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Whitfield v. Municipality of Fajardo, 564 F.3d 40, 45 (1st Cir. 2009) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). When evaluating the finality of an order entered after judgment, courts generally treat the post-judgment proceeding as if it were a lawsuit distinct from the suit that generated the underlying judgment. See, e.g., United States v. Parker, 927 F.3d 374, 380 (5th Cir. 2019); JPMorgan Chase Bank, N.A. v. Winget, 920 F.3d 1103, 1106 (6th Cir. 2019); Star Ins. Co. v. Risk Mktg. Grp., 561 F.3d 656, 659 (7th Cir. 2009). Consequently, an order entered after judgment is final if it leaves the district court with no further work to resolve the post-judgment dispute and, thus, ends the post-judgment proceeding. See Whitfield, 564 F.3d at 45; Romero Barcelo v. Brown, 655 F.2d 458, 461 (1st Cir. 1981).

Here, the order denying Erikon's motion for leave to execute on the judgment ended the pending dispute between the parties over Erikon's post-judgment collection efforts. Erikon sought the appointment of a special master to conduct a public sale of the attached parcels of land, and CMG opposed this request.

The order definitively resolved this dispute in CMG's favor: the court ruled that the five-year period for execution of judgments under Puerto Rico law had expired and denied leave to execute on the judgment out of time. That order effectively barred Erikon from continuing to seek to execute on the judgment and left no additional work for the court to do. Because the order terminated Erikon's post-judgment execution efforts, we conclude that it comprised a final order, immediately appealable under 28 U.S.C. § 1291. See Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp., 509 F.3d 216, 220 (5th Cir. 2007) (holding that order refusing to permit judgment creditor to execute on judgment was final); TDK Elecs. Corp. v. Draiman, 321 F.3d 677, 678 (7th Cir. 2003) (same).

This conclusion does not end the inquiry into our appellate jurisdiction. We also must untie a jurisdictional knot largely attributable to poor draftsmanship. A notice of appeal must specify the orders and/or judgments that the appellant wishes to challenge. See Fed. R. App. P. 3(c)(1)(B). Erikon's notice of appeal specifies only the order denying its motion for reconsideration, yet its brief asks us to vacate the order denying its motion for leave to execute on the judgment as well. This mismatch raises an obvious question about whether the notice of appeal suffices to confer appellate jurisdiction to review the underlying order.

- 8 -

As a general rule, a circuit court's jurisdiction extends only to review of the orders and judgments specifically enumerated in the notice of appeal. See Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 209 (1st Cir. 2012). But general rules typically admit of exceptions, and an appellant's failure to designate a particular order in the notice of appeal does not necessarily deprive us of jurisdiction to review that order. See Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 389 n.2 (1st Cir. 2013); Rojas-Velázquez, 676 F.3d at 209. Instead, we "construe notices of appeal liberally and examine them in the context of the record as a whole" in an effort to discern the appellant's intent. Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3-4 (1st Cir. 2002).

We have undertaken such examinations on various occasions when a notice of appeal targeted only the denial of a motion for reconsideration. See Comité Fiestas de la Calle San Sebastián, Inc. v. Soto, 925 F.3d 528, 531-32 (1st Cir. 2019) (collecting cases). Because the questions sought to be reviewed through a motion for reconsideration often are intertwined with those involved in the resolution of the original motion, we sometimes will construe a notice of appeal designating only an order denying reconsideration as permitting review of the underlying order. See, e.g., Rojas-Velázquez, 676 F.3d at 209; Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 112

(1st Cir. 2007).  In assessing the propriety of construing a particular notice of appeal in this manner, we give particular weight to whether the defect in the notice of appeal has prejudiced the appellee and whether the appellant's intent to appeal the underlying order is manifest.  See Young v. Gordon, 330 F.3d 76, 80 (1st Cir. 2003); Chamorro, 304 F.3d at 4.

In the case at hand, the absence of any reference in the notice of appeal to the underlying order clearly did not prejudice CMG.  After all, its brief on appeal defends the underlying order on the merits and does not so much as mention a possible jurisdictional defect.  In similar circumstances, we have found such facts to be indicative of the absence of prejudice.  See Chamorro, 304 F.3d at 4 (finding that notice of appeal designating only order denying reconsideration caused no prejudice to appellee because "both sides [had] fully briefed the merits" of underlying order).

Whether Erikon has demonstrated a clear intent to challenge both the underlying order and the order denying reconsideration is a more difficult issue.  In its appellate briefing, Erikon repeatedly refers just to the order denying reconsideration as the source of its discontent. Nevertheless, it asks that we vacate both orders and — save for one sentence in the conclusion of its brief — engages on the merits of the underlying order without reference to the standard for reconsideration under

Rule 59(e).  In the absence of a smoking gun, a party's intent is notoriously difficult to prove.  See United States v. Kilmartin, 944 F.3d 315, 339 (1st Cir. 2019), cert. denied, __ S. Ct. __ (2020).  Here, the lack of clarity in Erikon's briefing compounds the problem of ascertaining its intent.

In all events, the rigors of this case do not demand that we conclusively resolve the confusion created by the mismatch between Erikon's notice of appeal and its appellate briefing.  When an appeal raises an enigmatic question of statutory jurisdiction and the merits are easily resolved in favor of the party who would benefit from a finding that jurisdiction is wanting, we may bypass the jurisdictional inquiry and proceed directly to the merits.  See First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 10 & n.2 (1st Cir. 2015).  Relying on this tenet, we occasionally have finessed thorny questions about the meaning and effect of an inartfully drafted notice of appeal and assumed the existence of jurisdiction to review an order not specifically designated in that notice.  See, e.g., Nikitine, 715 F.3d at 389 n.2; McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 213-14 (1st Cir. 2012); Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 26-27 (1st Cir. 2012).  We follow that praxis here and assume for argument's sake that Erikon's notice of appeal confers jurisdiction upon us to review both of the above-described orders.

- 11 -

**Leave to Execute**

We start our inquiry into the merits with the district court's denial of Erikon's motion for leave to execute on the judgment. Erikon argues — as it did below — that it has tried diligently to enforce the judgment since the judgment was entered in 2008. In its view, the district court abused its discretion in denying leave to execute on the judgment beyond the five-year period established under Puerto Rico law.

Federal Rule of Civil Procedure 69(a) governs the execution of a money judgment in federal court. This rule directs that, in most cases, "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). We therefore look to the law of the state in which the district court sits both for the parties' substantive rights and for the procedure to be followed. See Whitfield, 564 F.3d at 43. For these purposes, we treat Puerto Rico as "the functional equivalent of a state." Id. at 43 n.2. Accordingly, Puerto Rico law establishes the substantive rules that guide our examination of Erikon's efforts to execute on the judgment.

Pursuant to P.R.R. 51.1, a judgment creditor may execute on the judgment at any time within five years after it becomes final. See P.R. Laws Ann. tit. 32, app. V, § 51.1. Once that

period has elapsed, P.R.R. 51.1 provides that a judgment creditor may execute on the judgment only with leave of court. See id. P.R.R. 51.1 does not specify what circumstances may warrant a grant of leave to execute on a judgment beyond the five-year period. As a baseline matter, though, Erikon does not contend that a judgment creditor may obtain leave of court without demonstrating, at a minimum, either diligence in attempting to enforce the judgment or good cause for failing to do so.

In its 2015 order denying Erikon's motion to appoint a special master, the district court determined that the five-year period for execution of judgments under P.R.R. 51.1 had expired. The court invited Erikon to seek leave to continue its collection efforts. For a long time, Erikon did nothing. Then — over two years later — Erikon requested leave of court, describing what it envisioned as its diligent attempts to enforce the judgment.[3] The court found these efforts wanting and denied Erikon leave to execute on the judgment. It noted that, by the time Erikon filed its motion, more than six years had elapsed after CMG and Wishinsky's final payment in January of 2011. To make matters worse, Erikon wholly failed to justify the delay of over two years

---

[3] Apart from its claim of diligence, Erikon has not claimed good cause for its failure to execute on the judgment at an earlier date.

- 13 -

between the denial of its first request to appoint a special master and its filing of its motion for leave to execute.

It is undisputed that our review of the district court's denial of Erikon's motion for leave to execute on the judgment under P.R.R. 51.1 is for abuse of discretion. Cf. Lewis v. United Joint Venture, 691 F.3d 835, 839 (6th Cir. 2012) (reviewing enforcement remedy issued under Rule 69 for abuse of discretion); Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 129 (2d Cir. 2009) (reviewing ruling on request for post-judgment attachment for abuse of discretion). The abuse-of-discretion rubric "is not monolithic: within it, embedded findings of fact are reviewed for clear error, questions of law are reviewed de novo, and judgment calls are subjected to classic abuse-of-discretion review." Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010).

As the district court seems to have recognized, Erikon attempted (with at least some degree of diligence) to enforce the judgment until January of 2011. When it became apparent in mid-2008 that CMG and Wishinsky would not voluntarily satisfy the judgment, Erikon requested and received court orders directing the public sale of two parcels of land owned by one or both of the judgment debtors. Erikon then sought to take Wishinsky's deposition to explore other collection avenues. Finally, Erikon

agreed to a payment schedule and collected payments on account from CMG or Wishinsky for approximately twenty-two months.

But that is only part of the story, and we discern no abuse of discretion in the district court's determination that leave to execute on the judgment was unwarranted because more than six years had passed between the final payment that Erikon received in January of 2011 and its effort to collect the balance due by means of its motion in July of 2017. During this lengthy interval, Erikon made minimal efforts to enforce the judgment, and what few steps it took did not excuse so protracted a delay. We explain briefly.

Erikon does not contend that it undertook any meaningful attempt to enforce the judgment during the two years following its receipt of the last payment on account in January of 2011. Although it notes that this period saw the passing of the presiding judge and the withdrawal of opposing counsel, neither event prevented Erikon from trying to enforce the judgment for the entire two-year span. Erikon's utter failure to act during this period seriously undermines its claim that it consistently has attempted to enforce the judgment.

There is more. Erikon asserts that it resumed diligent efforts to enforce the judgment in early 2013 when it began negotiations with Wishinsky's new attorney. But although these negotiations (in which CMG and Wishinsky participated on and off)

lasted until early 2017, they took place in connection with the Seaside litigation. The district court reasonably concluded that these negotiations did not excuse Erikon's procrastination in seeking leave to execute on the judgment in a separate case. After all, the dispute among Erikon, CMG, and Wishinsky that produced the judgment was fundamentally distinct from the Seaside litigation (even though both arose out of the same development project). The former involved CMG's and Wishinsky's obligations under the promissory note and their failure to comply with an existing judgment, whereas the Seaside litigation centered on Erikon's liability for expenses incurred during the project. See Caribbean Seaside, 867 F.3d at 44. To cap the matter, neither CMG nor Wishinsky was a party to the Seaside litigation, and the attorney simultaneously representing Wishinsky and Seaside in the two cases moved to withdraw from both representations in September of 2014.

As CMG's participation in some of these negotiations indicates, there may have been some efficiency in trying to resolve the two disputes together. But Erikon had an enforceable judgment against CMG and Wishinsky on which it could have sought to execute without reaching such a global settlement. In these circumstances, it seems reasonable for the district court to think that Erikon appears to have been focused primarily on defending the Seaside litigation rather than trying to enforce the judgment.

Abuse of discretion is a highly deferential standard of review. See González-Rivera v. Centro Médico del Turabo, Inc., 931 F.3d 23, 27 (1st Cir. 2019). Under its umbrella, the district court plausibly could have viewed the negotiations in the Seaside litigation as an inadequate excuse for a delay of four years in attempting to enforce the judgment. Given the recalcitrance that CMG and Wishinsky already had displayed toward satisfying the judgment, it was reasonable to conclude that a diligent judgment creditor in Erikon's shoes would have taken more direct steps to enforce the judgment. It should have been obvious to Erikon — as it apparently was to the court below — that other means of enforcing the judgment would likely pay greater dividends.

To be sure, Erikon did move in 2014 for the appointment of a special master to carry out the sale of the attached parcels of real estate. But once again Erikon did not diligently pursue this avenue for enforcing the judgment. Notwithstanding the district court's explicit warning in its 2015 order that Erikon needed to seek leave of court to execute on the judgment, Erikon twiddled its corporate thumbs for over two years before doing so. The district court found that Erikon failed to offer an adequate excuse for this delay — a finding that was well within the encincture of its discretion.

That ends this aspect of the matter. We have admonished before that "[t]he law ministers to the vigilant not to those who

sleep upon perceptible rights." Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987). Even though the context here is different, the admonition rings equally true. Over the course of more than six years, Erikon took minimal steps to enforce the judgment, conducting sporadic and indirect negotiations in a separate lawsuit and filing one motion that it did not assiduously pursue. What is more, even after the district court had specifically invited Erikon to seek leave to execute on the judgment, it waited over two years before taking appropriate action. In the circumstances of this case, waiting two years was the polar opposite of exercising diligence. On this record, there is no principled way in which we can hold that the district court abused its discretion in viewing Erikon's collection efforts as lacking in diligence and, thus, deeming unwarranted an extension of the period for execution of judgments. Consequently, we uphold the district court's denial of Erikon's motion for leave to execute on the judgment.

## C.

### Reconsideration

This brings us to Erikon's challenge to the district court's summary denial of its motion for reconsideration. We review the denial of a motion for reconsideration for abuse of discretion. See Guadalupe-Báez v. Pesquera, 819 F.3d 509, 518 (1st Cir. 2016). To prevail on such a motion, "a party normally

must demonstrate either that new and important evidence, previously unavailable, has surfaced or that the original judgment was premised on a manifest error of law or fact." Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 28 (1st Cir. 2014).

The mainstay of Erikon's motion for reconsideration was its challenge to the district court's conclusion that Erikon had delayed for too long before seeking leave to execute on the judgment. This challenge renewed and elaborated upon the same explanation for the delay that Erikon had advanced in its underlying motion. The more detailed explanation, Erikon said, demonstrated that leave of court was justified by its diligent efforts to enforce the judgment. The district court disagreed, and we detect no abuse of discretion.

There is little reason to tarry. As long as the district court has not "misapprehended some material fact or point of law," a motion for reconsideration is rarely "a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). We already have explained that the district court did not abuse its discretion in denying the underlying motion based on its supportable finding that Erikon had not acted diligently in seeking leave to execute on the judgment. See supra Part II(B). It was, therefore, not an abuse of discretion for the

court to reject Erikon's attempt to repastinate the same ground. See Palmer, 465 F.3d at 30.

Erikon's motion for reconsideration also debuted a new line of argument concerning the timeliness of its efforts to execute on the judgment. In its underlying motion, Erikon simply requested leave to execute on the judgment beyond the five-year period set forth in P.R.R. 51.1. Its motion for reconsideration adopted a new stance, disputing the premise that it needed leave of court in order to execute on the judgment. It repeats this argument to us. It posits that Article 1864 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5294, establishes a fifteen-year period for execution of money judgments — a period that it alleges should govern in this instance.[4] It further posits that even if the five-year period set forth in P.R.R. 51.1 applies, its current execution efforts are timely because they are a continuation of efforts commenced within that period.

We need not inquire into the merits of these theories because Erikon raised them for the first time in its motion for

_____

[4] CMG claims that Erikon did not raise this theory with sufficient clarity below and, thus, has waived it. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("[A]bsent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). Although this claim has some force, Erikon did reference Article 1864 twice in its motion for reconsideration. Because nothing turns on it, we assume, favorably to Erikon, that the argument was preserved.

reconsideration.  That is a fatal flaw:  it is settled beyond hope of contradiction that, at least in the absence of exceptional circumstances, a party may not advance new arguments in a motion for reconsideration when such arguments could and should have been advanced at an earlier stage of the litigation.  See, e.g., Mancini v. City of Providence ex rel. Lombardi, 909 F.3d 32, 48 (1st Cir. 2018); Perez v. Lorraine Enters., Inc., 769 F.3d 23, 28 (1st Cir. 2014).  The circumstances here are not exceptional, and Erikon has not come within a country mile of demonstrating a manifest error of law in the underlying order.

The short of it is that Erikon, in its motion for reconsideration, rehashed arguments that the district court had already rejected and advanced new theories that it could and should have advanced earlier in the case.  Given this combination of old arguments and arguments previously forgone, the district court did not abuse its discretion in denying the motion for reconsideration.

## III.

### Conclusion

We need go no further.  For the reasons elucidated above, the district court's denials of both Erikon's motion for leave to execute on the judgment and its motion for reconsideration are

**Affirmed.**