# United States Court of Appeals
## For the First Circuit

No. 24-1264

UNITED STATES OF AMERICA,

Appellant,

v.

MIGUEL E. PAVAO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Rikelman and Kayatta,*
Circuit Judges.

Zachary A. Cunha, U.S. Attorney, for appellant.
John L. Calcagni III, with whom Law Office of John L. Calcagni
III, Inc. was on brief, for appellee.

April 17, 2025

---

* Judge Selya heard oral argument in this case and
participated in the initial semble thereafter. His death on
February 22, 2025, ended his involvement in this case. The
remaining two panelists issued this opinion pursuant to 28 U.S.C.
§ 46(d).

**Per Curiam**.  During a lawful traffic stop on a public highway in Rhode Island, a local police officer smelled marijuana emanating from the stopped vehicle.  Based on the presence of marijuana and the driver's behavior, the officer concluded that he should call for backup and mount a search.  While waiting for backup, the driver -- defendant-appellee Miguel E. Pavao -- continued to exhibit peculiar behavior, including repeatedly reaching toward his waistband.  After a second officer arrived, the first officer conducted a pat-down search of the defendant to ensure officer safety.  The search revealed that the defendant, a person previously convicted of a felony, unlawfully possessed a firearm.  See 18 U.S.C. § 922(g)(1).

In due course, the defendant's conduct came to the attention of the government, which charged him with a federal offense: possession of a firearm after previously being convicted of a felony.  See id.  As pretrial proceedings progressed, the defendant moved to suppress the firearm and all statements made during the stop and the pat-down.  The district court granted the motion to suppress and later denied the government's motion for reconsideration.  This interlocutory appeal followed.

In its present posture, the appeal requires us to determine whether the officer acted lawfully both when he prolonged the traffic stop and when he conducted the pat-down frisk.  Concluding, as we do, that the officer had reasonable suspicion

- 2 -

sufficient to justify his actions, we reverse the district court's grant of the defendant's motion to suppress and remand for further proceedings consistent with this opinion.

**I.**

We briefly rehearse the pertinent facts (most of which are uncontroverted). On February 6, 2022, Connor Bemis, a Warwick, Rhode Island police officer, stopped the defendant's vehicle after observing the commission of several traffic violations. These violations included swerving into the emergency breakdown lane on a public highway. See R.I. Gen. Laws Ann. § 31-15-16. The officer then approached the stopped vehicle from the passenger side. The window on that side was open.

The defendant was alone in his vehicle, and Officer Bemis asked him for his license, registration, and proof of insurance. While waiting for the defendant to gather his documents, Officer Bemis noticed the smell of raw marijuana wafting from the vehicle. He also saw raw marijuana crumbs on the front seat passenger-side floorboard. And when the defendant handed over his documents, Officer Bemis observed that his hand was trembling.

Queried about his erratic driving, the defendant explained -- as Officer Bemis recalled it -- that "he had been reaching around or messing around with stuff inside the vehicle." The defendant also admitted that "he had smoked a marijuana joint earlier in the day and was tired." Officer Bemis asked the

- 3 -

defendant if he had a medical marijuana card, and the defendant replied that he did not.[1]  Based on his observations, including the sight and smell of marijuana and the defendant's nervous behavior, Officer Bemis decided to conduct a search of the vehicle. Officer Bemis also determined he could not safely conduct such a search alone and thus broadcast a call for backup within a minute or two of stopping the defendant's vehicle.

While waiting for backup, Officer Bemis elected to stay by the passenger-side door of the defendant's vehicle for two reasons: first, for his own safety, and second, because he did not want to lose sight of the defendant.  During this interlude, the defendant began to smoke cigarettes one after the other in rapid succession.

Officer Bemis recognized that the defendant exhibited an instance of a specific nervous behavior known as "target glancing": He saw the defendant repeatedly stare at a particular area (his waistband).  Premised on his training and experience, Officer Bemis

---

[1]  As a result of recent amendments, Rhode Island law provides certain protections for the medical use of marijuana.  For instance, a "qualifying patient cardholder who has in his or her possession a registry identification card shall not be subject to arrest . . . solely for the medical use of medical marijuana; provided that the qualifying patient cardholder possesses an amount of medical marijuana that does not exceed . . . [2.5 ounces] of dried medical marijuana, or its equivalent amount . . . ." R.I. Gen. Laws Ann. § 21-28.6-4(a).  Officer Bemis testified that he would have proceeded differently had the defendant produced a medical marijuana card.

was aware that individuals usually target glance toward areas containing contraband or weapons.

This target glancing took on added significance when the defendant repeatedly reached for his waistband. Specifically -- in Officer Bemis's words -- the defendant "started aggressively making motions towards his waistband." Then, using his right hand, the defendant began "fidgeting with his waistline" as if "trying to tuck something or move something in his waistband." The defendant reached to his waistband so many times that Officer Bemis had to order him to stop.

In response to the officer's directive, the defendant's body language became agitated. He then withdrew a bag of raw marijuana from inside his jacket, tossed it on the passenger seat, and told Officer Bemis something to the effect of, "Now you don't need to search my car, here you go."

Officer Bemis testified that he was so concerned with the way in which the defendant had been reaching toward his waistband that he thought that additional precautions were necessary to ensure officer safety. So, once Officer Bemis's backup (in the person of Officer Stone) arrived at the scene some four minutes later, Officer Bemis ordered the defendant to put his hands on his head before removing him from his vehicle.

Officer Stone approached the driver's side of the stopped vehicle. The defendant left his vehicle on command and

without incident.  Officer Stone then escorted him to the rear of the vehicle where Officer Bemis met them.  When the defendant made yet another move toward his waistband, Officer Bemis directed him to put his hands on the back of the vehicle.  The defendant complied, and Officer Bemis proceeded to pat him down.  This pat-down revealed a firearm in the defendant's waistband, and the defendant was arrested on the spot.

**II.**

In March of 2022, a federal grand jury sitting in the District of Rhode Island returned an indictment charging the defendant with possession of a firearm after previously being convicted of a felony.  See 18 U.S.C. § 922(g)(1).  The defendant moved to suppress the firearm and all statements made during both the stop and the pat-down.  The government opposed the motion, and the district court held an evidentiary hearing.  Only one witness -- Officer Bemis -- testified at the hearing.  In the end, the district court granted the defendant's motion to suppress.

The court relied on two grounds.  First, the court found that Officer Bemis unduly prolonged the traffic stop.  Although Officer Bemis's initial questioning was consistent with a stop for the defendant's erratic driving, "nothing in those two minutes gave reason to believe [that the defendant] was committing another crime."  United States v. Pavao, No. 22-00034, 2023 WL 3934555, at *3 (D.R.I. June 9, 2023).  Instead, the defendant's admission that

he had smoked marijuana earlier in the day explained both the odor of marijuana and the crumbs on the floor, such that there was nothing to indicate that he possessed any marijuana exceeding the one ounce that escalates a civil violation to a criminal offense under Rhode Island law.  Id.  Even though the court acknowledged that First Circuit precedent held that the odor of burnt marijuana alone justified the search of a vehicle, the district court noted that the critical case -- United States v. Staula, 80 F.3d 596, 602-03 (1st Cir. 1996) -- had been decided before marijuana was decriminalized in Rhode Island.  See Pavao, 2023 WL 3934555, at *3.  Thus, the district court reasoned, Staula's holding was not controlling and -- in the present state of the law -- the smell of burnt marijuana did not indicate that an unlawful amount of marijuana was in the car.  See id.  Consequently, the odor of marijuana alone did not give rise to reasonable suspicion of criminal activity.  See id.  Nor did the district court regard the defendant's apparent nervousness as contributing in any material way to the reasonable suspicion calculus.  Id. at *4.  And the defendant's fidgeting with his waistband did not bridge this gap because the defendant had touched his waistband only once Officer Bemis called for backup.  See id.

Second, the district court found that even if the prolonged detention was lawful, the subsequent pat-down was not. See id.  The court found that no circumstances prior to the frisk

raised a sufficient degree of suspicion that the defendant was armed: The defendant did not exhibit aggressive or threatening speech or behavior and the defendant's repeated touching of his waistband was not indicative of a person with a weapon. See id. at *4-5. Nor did the defendant's target glancing move the needle, as it occurred only "at one point." Id.

In the end, the district court determined that Officer Bemis's concerns were not supported by specific behavior that would have led a reasonable officer to believe that the defendant was armed. See id. at *4-5. Accordingly, the court granted the defendant's motion to suppress.

The government lost little time in moving for reconsideration of the district court's suppression ruling. The government argued, inter alia, that the search was supported by reasonable suspicion because possession of less than one ounce of marijuana was a civil violation under Rhode Island law and marijuana itself was contraband. The government reinforced this argument by pointing out that, regardless of Rhode Island's posture toward the decriminalization of marijuana, under First Circuit precedent, the odor or presence of marijuana allowed Officer Bemis to search the vehicle because marijuana possession remained a federal crime. See United States v. Bizier, 111 F.3d 214, 219 n.3 (1st Cir. 1997) (citing 21 U.S.C. § 844).

The district court denied the government's motion to reconsider. In so doing, it noted that the government did not cite Bizier earlier. In its view, a motion to reconsider was not the government's chance to introduce an authority that it could have cited originally.

The government now appeals. See 28 U.S.C. § 1292. It challenges both the granting of the defendant's motion to suppress and the denial of the government's motion for reconsideration.

**III.**

**A.**

In reviewing challenges to orders granting or denying suppression, we test the district court's factual findings for clear error. See United States v. Sowers, 136 F.3d 24, 26 (1st Cir. 1998). In contrast, "we review de novo the district court's conclusions of law, including its application of the law to the facts, its . . . reasonable suspicion determinations, and the district court's ultimate legal decision to grant or deny the motion to suppress." United States v. Camacho, 661 F.3d 718, 724 (1st Cir. 2011).

Because a traffic stop typically embodies a detention of both a vehicle and its driver, it is a seizure within the purview of the Fourth Amendment. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); United States v. Chhien, 266 F.3d 1, 5 (1st Cir. 2011). As a result, it is "subject to the constitutional imperative that

- 9 -

it not be 'unreasonable' under the circumstances." Whren v. United States, 517 U.S. 806, 810 (1996). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. And while an officer may prolong a lawful stop to conduct certain checks, including an examination of both the driver's and vehicle's documents, he may not prolong it beyond the time reasonably required to complete the mission of the stop unless he has "the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez v. United States, 575 U.S. 348, 354–55 (2015). In other words, the prolonging of a stop "must be supported by a reasonable and articulable suspicion of criminal activity." Chhien, 266 F.3d at 6.

Reasonable suspicion is a concept, not a constant, and defies exact definition. See id. It "requires more than a mere hunch but less than probable cause." United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008). Whether reasonable suspicion exists is determined on a case-by-case basis, considering all of the attendant circumstances in each individual case. See Florida v. Royer, 460 U.S. 491, 500 (1983); Chhien, 266 F.3d at 6. During the course of this inquiry, we weigh "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." Sowers,

- 10 -

136 F.3d at 27 (quoting United States v. Hensley, 469 U.S. 221, 228 (1985)).

In the context of a traffic stop, we "ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau -- the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." Chhien, 266 F.3d at 6; see Sowers, 136 F.3d at 27. Faithful to this approach, we have held that reasonable suspicion may develop over the course of a traffic stop. See United States v. Ramdihall, 859 F.3d 80, 90 (1st Cir. 2017).

The defendant does not gainsay that Officer Bemis's initial traffic stop -- arising out of the defendant's erratic driving -- was lawful. Consequently, our first order of business is to address whether the totality of the circumstances prior to Officer Bemis's decision to call for backup justifies his suspicion that the defendant engaged in some criminal activity. See United States v. Woodrum, 202 F.3d 1, 6-7 (1st Cir. 2000). If so, Officer Bemis acted lawfully when he prolonged the traffic stop while he called for backup and awaited the arrival of a fellow officer.

The government argues that the sight and smell of marijuana prior to the call for backup provided reasonable suspicion for a search and arrest under Staula and Bizier. See 80 F.3d at 602-03; 111 F.3d at 219, 219 n.3. As the government

- 11 -

explains, Bizier held that evidence of marijuana in a lawfully stopped vehicle provided probable cause to arrest the occupants of the vehicle -- even in a state (like Maine) that had decriminalized marijuana. 111 F.3d at 219. After all, as the government had also argued before the district court on its opposition to the motion to suppress, possession of marijuana in any detectable quantity remains a crime under federal law. See 21 U.S.C. § 844. It follows -- the government exhorts -- that evidence of marijuana independently supports an arrest, regardless of a state's posture toward the criminality of marijuana possession. See Bizier, 111 F.3d at 219 n.3. And in response to the district court's refusal to consider Bizier at the motion-for-reconsideration stage, the government notes that its proffer of that decision was not based on either a new argument or new evidence; rather, the government had consistently argued that the odor and presence of marijuana alone provided a basis for a finding of reasonable suspicion, regardless of state law. Finally, the government seeks to debunk the notion that allowing a federal marijuana offense to undergird a finding of probable cause may serve to circumvent state decriminalization of marijuana because the relevant question is whether Officer Bemis faced evidence that raised reasonable suspicion of any criminal offense.

The defendant counters that cases like Staula that were decided prior to Rhode Island's modification of the laws regarding

- 12 -

marijuana no longer have force. In support, he cites state court decisions in jurisdictions which -- like Rhode Island -- have decriminalized possession of certain amounts of marijuana. See, e.g., Commonwealth v. Rodriguez, 37 N.E.3d 611, 612 (Mass. 2015). The defendant argues that because there is no basis for finding that he possessed a quantity of marijuana that would be unlawful under state law, the prolonged stop was unlawful.

The district court found that -- prior to extending the traffic stop by calling for backup -- Officer Bemis detected both the sight and smell of marijuana. He also observed the defendant's hand tremble. And "[a]t about the same time" as he called for backup, Officer Bemis saw the defendant "reach down to the waistband of his pants as if to adjust his pants." Pavao, 2023 WL 3934555, at *1. These findings are not disputed. And where, as here, the underlying facts supporting an officer's reasonable suspicion are not in dispute, the question of whether those facts add up to reasonable suspicion is a question of law, engendering de novo review. See Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009); cf. Wilkinson v. Garland, 601 U.S. 209, 211-22 (2024) (reasoning that application of legal standard to established set of facts is reviewable as a question of law).

In resolving the suppression issue, the district court acknowledged that Staula, 80 F.3d at 602-03, "indeed held that the mere odor of burnt marijuana justifies" detaining a vehicle in

- 13 -

order to search it.  Pavao, 2023 WL 3934555, at *3.  The court then proceeded to note a changed circumstance:  From 2013 forward, the possession of one ounce or less of marijuana was a civil, not criminal, infraction in Rhode Island.  Id.; see R.I. Gen. Laws Ann. § 21-28-4.01(c)(2)(iii).

It is at this point that we part company with the district court's reasoning.  The district court concluded that Rhode Island's post-2013 treatment of marijuana possession placed "the whole 'odor of marijuana' in a different light," and it therefore chose to "chart a course deviant from [Staula]."  Pavao, 2023 WL 3934555, at *3.  We are not convinced.  Possession of marijuana in any amount remains a federal crime, see 21 U.S.C. § 844, just as it was when Bizier was decided.  There, we considered whether an officer's observations flowing from a valid traffic stop in Maine -- a state, like Rhode Island, in which possession of a small amount of marijuana was even then a civil, not criminal, infraction -- provided sufficient probable cause for an arrest.[2]  See 111 F.3d at 217-19, 219 n.3.  The defendant argued

---

[2] When it denied the government's motion to reconsider, the district court noted that the government had not previously cited Bizier and refused to take that decision into account.  We disagree.  While a party ordinarily may not advance a new argument for the first time in a motion for reconsideration when such argument could have been advanced at an earlier stage, see Caribbean Mgmt. Grp., Inc. v. Erikon LLC, 966 F.3d 35, 45 (1st Cir. 2020), the government had seasonably raised the "federal crime" argument in opposition to the motion to suppress.  The only thing that was new was the government's specific citation to

that because possession of marijuana was a civil, not criminal, infraction in Maine, such possession could not furnish a basis for arrest. See id. at 219 n.3. We rejected the defendant's argument, reasoning that because possessing any quantity of marijuana remained a federal crime, see id., "evidence of marijuana in a [vehicle] . . . stopped for a motor vehicle violation [provides] probable cause to arrest the occupants of the [vehicle] on a possession charge," id. at 219.

So it is here. Although possession of less than an ounce of marijuana is no longer a crime in Rhode Island, it is still "a crime under federal law which independently supports an arrest." Id.; see 21 U.S.C. § 844. It further follows, a fortiori, that the sight and smell of marijuana furnished the basis for Officer Bemis's reasonable suspicion that the defendant was committing a federal marijuana-related crime. And because Officer Bemis

---

Bizier. A party may alert a court to relevant authorities whenever such authorities come to its attention, see Fed. R. App. P. 28(j), and a reviewing court is free to consider authorities regarding a properly preserved argument even if those authorities are proffered for the first time on appeal, see Alston v. Town of Brookline, 997 F.3d 23, 44 (1st Cir. 2021) (explaining that "[w]hether or not an issue is preserved . . . does not depend on what authorities the arguing party cites"); Metavente Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 773 n.20 (7th Cir. 2010) (holding that "[a] litigant may cite new authority on appeal"). It follows, we think, that a party is free to proffer new authorities relating to a previously raised argument on a motion for reconsideration. And because Bizier is directly on point with respect to the government's previously raised "federal crime" argument, we consider it.

reasonably suspected that the defendant was committing such a crime, he was justified in calling for backup to help search the vehicle even though that course of action resulted in briefly prolonging the stop.

The defendant contends that allowing local police officers to enforce federal marijuana laws despite more lenient state marijuana laws would implicate what is known as the silver platter doctrine. See Elkins v. United States, 364 U.S. 206, 208, 223 (1960) (holding that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible"). But this argument presumes that the search by Officer Bemis would have been illegal if conducted by federal officers, and, as we have just explained, that is not the case, given that possession of marijuana in any amount continues to be a federal crime. And the defendant's plaint that allowing local police officers to enforce federal marijuana laws would allow the officers to nullify state legislatures' roles is not a relevant factor in our reasonable suspicion inquiry.[3]

---

[3] Nor for that matter does holding a person liable for a federal crime "nullify" a state's decision not to have a duplicate law.

- 16 -

Because Officer Bemis had reasonable suspicion that criminal activity was afoot, he acted lawfully in prolonging the stop and calling for backup.  See Chhien, 266 F.3d at 5-6.

**B.**

We turn next to the question of whether Officer Bemis's frisk of the defendant withstands scrutiny.  Whether a pat-down search following a lawful traffic stop is reasonable is largely a matter of officer safety.  See Terry v. Ohio, 392 U.S. 1, 27 (1968).  Typically, it depends upon whether, in light of all the attendant circumstances, the officer is justified in suspecting that the individual is armed and dangerous.  See United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004).  "Once an officer has formed a reasonable belief that a detained person may be armed and dangerous, a pat-down for protective purposes is, without more, deemed reasonably related in scope to the stop."  Ruidíaz, 529 F.3d at 33.

Determining whether an officer's suspicions are reasonable is "a 'fact-sensitive task' which looks at the totality of the circumstances to determine whether there is a particularized, objective basis to suspect someone is armed and dangerous."  United States v. Harrington, 56 F.4th 195, 203 (1st Cir. 2022) (citation omitted).  A suspect's behavior and the context of the stop factor into the totality of the circumstances that must be considered.  See id.  At the bottom line, the court

must determine whether a reasonable officer could point to specific facts which, together with rational inferences drawn therefrom, warranted a pat-down. See id. at 204.

The district court found Officer Bemis truthful and, thus, considered the defendant's behavior on the basis of the facts as Officer Bemis presented them. The court supportably found that the defendant did not engage in any aggressive or threatening speech and was in general compliant and cooperative. See Pavao, 2023 WL 3934555, at *5. The court also found, however, that the defendant touched his waistband several times prior to the search and target glanced at his waistband at one point. Id. On these uncontradicted facts, the court concluded that the defendant's actions, taken in their entirety, would not have led a reasonable officer to believe that he was armed. See id. at *4-6. Because there is no dispute as to the facts underlying Officer Bemis's decision to conduct the pat-down frisk, the question of whether those facts add up to reasonable suspicion is a question of law, which we review de novo. See Holder, 585 F.3d at 504. After careful consideration, we conclude -- contrary to the district court -- that the sum total of these facts comprises reasonable suspicion sufficient to justify the pat-down frisk.

In reaching this conclusion, we find that the district court afforded insufficient weight to the defendant's unusual behavior throughout the stop. Of foremost concern were the

- 18 -

defendant's actions regarding his waistband:  He reached toward and fidgeted with his waistband -- as if trying to hide or to move an object there -- so many times that Officer Bemis had to instruct him to refrain from doing so.  See Harrington, 56 F.4th at 204 (finding that suspect's reaching for something in vehicle and reaching toward his pocket were among "most notabl[e]" factors in supporting reasonable suspicion that suspect was armed and dangerous).  Although we have previously held that a defendant's reaching movement towards a vehicle's center console upon being approached by police officers did not support a finding of reasonable suspicion, United States v. McKoy, 428 F.3d 38, 40-41 (1st Cir. 2005), here Pavao's movements were not "consistent with reaching for a driver's license or registration" nor with any other "perfectly lawful action that is to be expected when one is pulled over by the police," id. at 40.  Nor was there any indication in McKoy that the defendant refused an officer's orders to stop his reaching movements, id. at 40-41, whereas here, Pavao continued reaching despite such orders.  See also Harrington, 56 F.4th at 204 (discussing defendant's repeated "noncompliance" with officer instructions as a key fact in the reasonable suspicion analysis).  Thus, unlike the district court, we do not think that the fact that the defendant refrained from putting his hand inside his waistband meaningfully detracted from the significance of his ongoing motions at and near his waistband.

Nor do we readily dismiss the target glancing. The district court attempted to minimize this phenomenon because it occurred only once. But Officer Bemis's training and experience are worthy of deference. See United States v. Brown, 621 F.3d 48, 56 (1st Cir. 2010). Even the single instance of target glancing -- which encompassed the defendant staring at his waistband multiple times -- reasonably indicated to Officer Bemis's trained eye that the object that the defendant seemed to be trying to hide or move might very well have been a weapon. See Terry, 392 U.S. at 28 (reasoning that issue is not whether officer is absolutely certain individual is armed, only whether reasonably prudent person would be warranted in believing safety was in danger). In the larger context of the stop, the defendant's target glancing weighs in favor of a finding of reasonable suspicion. See United States v. Arvizu, 534 U.S. 266, 273 (2002). Thus, we conclude that the defendant's ongoing, unusual, and concerning behavior regarding his waistband would have led a reasonable officer to suspect that the defendant was armed and dangerous. See United States v. Soares, 521 F.3d 117, 120 (1st Cir. 2008) (holding that unordinary, furtive movements considered in finding totality of circumstances created reasonable suspicion); see also United States v. Moorefield, 111 F.3d 10, 13-14 (3d Cir. 1997) (reversing district court's order to suppress, finding pat-down justified in part by suspect's furtive hand movements which officer

believed were consistent with attempts to conceal something, despite district court's finding they were not suspicious).

We add, moreover, that the defendant's frustrated demeanor lent credence to the suspicion that the defendant presented a threat to officer safety. We believe that the district court committed clear error when it found that the defendant was not agitated during the stop. To the contrary, Officer Bemis (whose testimony the district court found credible) stated unequivocally that the defendant "became agitated" when Officer Bemis advised him to stop reaching for his waistband. Further, considering the defendant's indications that he may have been armed, his tossing a bag of marijuana toward Officer Bemis in an apparent attempt to dissuade Office Bemis from a more invasive search further supports a finding of reasonable suspicion.

Taking into account the totality of the defendant's evolving behavior throughout the stop -- including his trembling hand, agitated demeanor, incessant motions toward his waistband without innocent explanation, failure to obey officer instructions, target glancing, and flaunting of marijuana -- we think that the defendant's conduct provided a reasonable officer with an objective basis to suspect that the defendant posed a threat to officer safety. See Soares, 521 F.3d at 121 (holding that increased agitation, erratic behavior, and reaching toward suspicious area of vehicle made officer nervous and created

reasonable suspicion that suspect posed threat). Consequently, Officer Bemis's pat-down search was lawful.

## IV.

We need go no further.[4] For the reasons elucidated above, the district court's suppression order is <u>reversed</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion.

**<u>Reversed and Remanded</u>**.

---

[4] In view of our reversal of the district court's grant of the defendant's motion to suppress, we do not reach the government's appeal of the denial of its motion for reconsideration. The ruling on that motion has become moot. <u>See</u> <u>Patriot Cinemas, Inc.</u> v. <u>Gen. Cinemas Corp.</u>, 834 F.2d 208, 218 (1st Cir. 1987).